1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANTEL FULLER,<br><br>    Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | 1:06-cv-01710-AWI-SMS<br><br>FINDINGS AND RECOMMENDATION RE:<br>PLAINTIFF'S SOCIAL SECURITY<br>COMPLAINT (DOC. 1) |

   Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15). The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument.

   I. Procedural History

   On November 25, 2003, Plaintiff applied for DIB and SSI,

1  alleging disability since March 1, 2002. (A.R. 13, 66-68, 293-
2  95.)[1] Plaintiff alleged that she had chronic back and neck pain,
3  numbness in her fingers and hands, and spasms in legs and her
4  back. (A.R. 79.) After Plaintiff's claim was denied initially and
5  on reconsideration, Plaintiff requested, and appeared at, a
6  hearing before the Honorable Sean Teehan, Administrative Law
7  Judge (ALJ) of the Social Security Administration (SSA), on April
8  27, 2006. (A.R. 13.) Plaintiff appeared with an attorney and
9  testified. On June 26, 2006, the ALJ denied Plaintiff's
10 application for benefits. (Id. at 13-23.) After the Appeals
11 Council denied Plaintiff's request for review on September 22,
12 2006, Plaintiff filed the complaint in this action on November
13 20, 2006. (Id. at 6-8.) Briefing commenced on November 29, 2007,
14 and was completed with the filing on December 27, 2007, of
15 Defendant's brief.

16      II. Standard and Scope of Review

17      Congress has provided a limited scope of judicial review of
18 the Commissioner's decision to deny benefits under the Act. In
19 reviewing findings of fact with respect to such determinations,
20 the Court must determine whether the decision of the Commissioner
21 is supported by substantial evidence. 42 U.S.C. § 405(g).
22 Substantial evidence means "more than a mere scintilla,"
23 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
24 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
25 (9th Cir. 1975). It is "such relevant evidence as a reasonable
26 mind might accept as adequate to support a conclusion."

27 _____

28      [1] The ALJ stated in his decision that Plaintiff had protectively filed her application as of October 28, 2003. (A.R. 13.)

1  Richardson*,* 402 U.S. at 401. The Court must consider the record
2  as a whole, weighing both the evidence that supports and the
3  evidence that detracts from the Commissioner's conclusion; it may
4  not simply isolate a portion of evidence that supports the
5  decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
6  2006); Jones v. Heckler*,* 760 F.2d 993, 995 (9th Cir. 1985).
7  It is immaterial that the evidence would support a finding
8  contrary to that reached by the Commissioner; the determination
9  of the Commissioner as to a factual matter will stand if
10 supported by substantial evidence because it is the
11 Commissioner's job, and not the Court's, to resolve conflicts in
12 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
13 Cir. 1975).

14      In weighing the evidence and making findings, the
15 Commissioner must apply the proper legal standards. Burkhart v.
16 Bowen*,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
17 review the whole record and uphold the Commissioner's
18 determination that the claimant is not disabled if the
19 Commissioner applied the proper legal standards, and if the
20 Commissioner's findings are supported by substantial evidence.
21 See, Sanchez v. Secretary of Health and Human Services*,* 812 F.2d
22 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
23 the Court concludes that the ALJ did not use the proper legal
24 standard, the matter will be remanded to permit application of
25 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th
26 Cir. 1987).

27      III. Disability
28      In order to qualify for benefits, a claimant must establish

3

that she is unable to engage in substantial gainful activity due
to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of
not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).
A claimant must demonstrate a physical or mental impairment of
such severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the
basis of the medical evidence the claimed impairment is severe,
that is, of a magnitude sufficient to limit significantly the
individual's physical or mental ability to do basic work

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

4

1  activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the
2  basis of medical evidence the impairment equals or exceeds in
3  severity certain impairments described in Appendix I of the
4  regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant
5  has sufficient residual functional capacity, defined as what an
6  individual can still do despite limitations, to perform the
7  applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and
8  5) whether on the basis of the applicant's age, education, work
9  experience, and residual functional capacity, the applicant can
10 perform any other gainful and substantial work within the
11 economy, 20 C.F.R. § 404.1520(f).

12     With respect to SSI, the five-step evaluation process is
13 essentially the same. <u>See</u> 20 C.F.R. § 416.920.

14     Here, the ALJ found that Plaintiff's adjustment disorder was
15 severe but did not meet or medically equal a listing; Plaintiff
16 had the residual functional capacity (RFC) to lift and carry
17 fifty pounds occasionally and twenty-five pounds frequently; and
18 sit, stand and walk about six hours in an eight-hour day. (A.R.
19 15-16.) Plaintiff could understand and carry out simple, routine
20 instructions, and work with occasional contact with supervisors
21 and moderate exposure to coworkers and the public; she could not
22 perform her past relevant work of a certified nursing assistant,
23 group home counselor, and home care provider, but she could
24 perform the work of a hand packager, bagger, extractor operator,
25 and garment sorter. (A.R. 16, 18-19, 22.)

26     III. <u>Treatment of Expert Opinions</u>

27     The sole issue raised in this case concerns Plaintiff's
28 mental impairment and the rejection of the opinion of consulting,

5

1  examining psychiatrist Dr. Frank Wilson, Jr., that Plaintiff was
2  unable to relate and interact with co-workers, supervisors, and
3  the general public due to her personality disorder. Plaintiff
4  argues that in concluding that Plaintiff was able to relate to
5  co-workers, supervisors, and the public, and further in finding
6  that Plaintiff was able to work with occasional contact with
7  supervisors and moderate exposure to co-workers and the public,
8  the ALJ either committed an error of law, or made a finding that
9  was not supported by substantial evidence.

10      The ALJ noted generally regarding Plaintiff's mental
11  impairment that Plaintiff had received no group or individual
12  counseling; further, her medication was prescribed by a nurse
13  practitioner and was based solely on the Plaintiff's subjective
14  complaints. (A.R. 18.)

15      The ALJ noted that the only evidence of mental health
16  treatment was an entry from Fresno County Mental Health
17  indicating that Plaintiff was hospitalized in April 2006 on a
18  Welfare and Institutions Code § 5150 involuntary hold after
19  Plaintiff held a knife to her throat in a suicidal gesture but
20  was disarmed by her sister. (A.R. 18, 273-91.) Plaintiff was
21  given Ativan for agitation, and she significantly improved.
22  Plaintiff had reported being upset and depressed over mood
23  swings, the fact that her eight-year-old daughter had been
24  molested when she was two months old, and having learned from her
25  boyfriend's wife that Plaintiff's boyfriend was married;
26  Plaintiff felt like stabbing him but turned her anger on herself
27  and held her knife to her throat. The only symptoms were
28  depression and anger, and poor judgment and insight; otherwise,

1   Plaintiff was normal. (A.R. 278.) The diagnosis was mood disorder

2   with mixed disturbances of emotion and conduct, with danger to

3   herself or to others. (A.R. 274.) The following day, Plaintiff

4   was diagnosed with mood disorder not otherwise specified, rule

5   out bipolar, and was discharged with a triage score of six. (A.R.

6   273-91.)

7           A. Dr. Wilson's Opinion

8       In November 2004, Dr. Frank Wilson, Jr., M.D., performed a

9   comprehensive psychiatric consultative examination of Plaintiff,

10  who complained of irritability and inability to think because of

11  anxiety and depression, although she reported that she could

12  shop, do some chores, make meals, drive, and care for three

13  children aged one through eight years. (A.R. 212-15.) Dr. Wilson

14  found on examination that Plaintiff was oriented to three of four

15  spheres, had logical thought processes, recalled three of three

16  objects after three minutes, could perform serial sevens and

17  simple math, had normal intellectual functioning, and had no

18  hallucinations, delusions, or psychosis. Dr. Wilson thought that

19  Plaintiff's anxiety was mild. He diagnosed a dysthymic disorder,

20  marijuana abuse, and cluster B personality disorder with

21  principally borderline features. (A.R. 214.) Dr. Wilson assigned

22  a global assessment of functioning (GAF) of 68.[3]  He opined that

23

24          [3] A GAF, or global assessment of functioning, is a report of a
    clinician's judgment of the individual's overall level of functioning that is
25  used to plan treatment and to measure the impact of treatment as well as to
    predict its outcome. American Psychiatric Association, Diagnostic and
26  Statistical Manual of Mental Disorders at 32 (4th ed., text revision) (DSM-IV-
    TR). A GAF of 68 indicates a person with some mild symptoms (e.g., depressed
27  mood and mild insomnia) or some difficulty in social, occupational, or school
    functioning (e.g., occasional truancy, or theft within the household), but who
28  is generally functioning pretty well and has some meaningful interpersonal
    relationships. Id. at 34.

                                    7

Plaintiff could maintain concentration and attention and carry
out one-step or two-step, simple job instructions as well as
complex and technical instructions, but she was unable to relate
to and interact with co-workers, supervisors, and the general
public due to her personality disorder.

The ALJ stated the following:

> I give weight to Dr. Wilson's opinion that the claimant
> is able to perform simple, routine tasks. There is no
> evidence that she has any deficiencies of concentration,
> attention, persistence, or pace. I give less weight to
> the doctor's opinion that the claimant is unable to
> deal with others because it is unsupported by the medical
> evidence. She may have some difficulty in social or
> work interactions, but there is no evidence to show
> she must work in isolation. There is nothing in the
> treating notes, consultative reports, or hospital
> records to indicate that the claimant had any
> sort of personality disorder or was incapable of
> relating to others. I also give some weight to the
> opinion of the State agency analyst and medical
> reviewer that the claimant can perform simple
> repetitive tasks, but cannot work in close proximity
> to others or with the general public (Exhibit
> 6F). The opinion is consistent with the medical evidence
> and is generally consistent with Dr. Wilson's opinion.

(A.R. 19.)

The ALJ also referred to Dr. Wilson's opinion in the course
of discussing Plaintiff's mental capacity to perform simple,
routine work. The ALJ noted that Plaintiff's past work (as a
certified nursing assistant, group home counselor, and home care
provider), as well as her testimony that she had taken courses
and had received certificates for nursing assistant, home health
aid, and computer office procedure indicated that she had no
learning disorders. (A.R. 20, 22.) The ALJ stated:

> Dr. Wilson's report was somewhat inconsistent
> in that he diagnosed the claimant with dysthymic disorder
> and marijuana abuse, said she can perform (sic) extensive
> variety of technical and complex instructions, gave her
> a GAF of 68 yet then found she could not interact with

the general public, co-workers, or supervisors. He
diagnosed a personality disorder which has not been
diagnosed by any other medical treatment source. Her
appearance was good, mood was OK, and the only treatment
she received was Paxil, which was prescribed by a nurse.
The only hospitalization was when the claimant's boyfriend
married another woman, and the couple came to visit her.
There is evidence of other psychological stresses in the
past and recent life, but when released, the only
finding was of adjustment disorder with mixed
disturbance. My residual functional capacity is more
in keeping with the treating physician's opinion, and
gives some weight to Exhibits 4[4], p. 3 and 6F, p. 16,
yet does not find the claimant unable to relate to
supervisors, co-workers, and the public totally.
Moderate exposure to public and co-workers and
occasional exposure to supervisors is appropriate.

(A.R. 20-21.) In applying the psychiatric review technique, the

ALJ found that Plaintiff was mildly restricted in her activities

of daily living and her ability to maintain concentration,

persistence, and pace, and was moderately restricted in her

ability to maintain social functioning. (A.R. 21.)

The standards for evaluating expert opinions have been

recently restated:

By rule, the Social Security Administration favors
the opinion of a treating physician over non-treating
physicians. See 20 C.F.R. § 404.1527. If a treating
physician's opinion is "well-supported by medically
acceptable clinical and laboratory diagnostic
techniques and is not inconsistent with the other
substantial evidence in [the] case record, [it will be
given] controlling weight." Id. § 404.1527(d)(2). If a
treating physician's opinion is not given "controlling
weight" because it is not "well-supported" or because
it is inconsistent with other substantial evidence in
the record, the Administration considers specified
factors in determining the weight it will be given.
Those factors include the "[l]ength of the treatment
relationship and the frequency of examination" by the
treating physician; and the "nature and extent of the
treatment relationship" between the patient and the
treating physician. Id. §  404.1527(d)(2)(i)-(ii).
Generally, the opinions of examining physicians are

[4] The exhibits are identified with letters and numbers; it appears that the ALJ's reference to Exhibit "4"
should have been to Exhibit "4F."

afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ may reject the opinion of an examining physician and adopt the contradictory opinion of a nonexamining physician only for specific and legitimate reasons that are supported by substantial evidence in the record. Moore v. Commissioner of Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31).

By regulation, greater weight will be given to opinions based on or supported by relevant evidence, such as medical signs and laboratory findings. 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3). Likewise, the better an explanation a source provides for an opinion, the more weight will be given to the opinion. Id. The more consistent an opinion is with the record as

1 a whole, the more weight will be given to the opinion. 20 C.F.R.
2 § 404.1527(d)(4); 20 C.F.R. § 416.927(d)(4). A conclusional
3 opinion that is unsubstantiated by relevant medical documentation
4 may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33
5 (9th Cir. 1995). It is appropriate for an ALJ to consider the
6 absence of supporting findings, and the inconsistency of
7 conclusions with the physician's own findings, in rejecting a
8 physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33
9 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.
10 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).
11 Contradiction of a conclusion by contemporaneous findings is a
12 basis for rejecting an opinion. Johnson v. Shalala, 60 F.3d 1428,
13 1432-33 (9th Cir. 1995).

14      Substantial evidence supports the ALJ's reasoning. A review
15 of the remainder of the medical evidence shows that it did not
16 provide any support for a diagnosis of personality disorder.

17      Plaintiff's treatment came primarily from Carol Istvanik, a
18 family nurse practitioner. In July 2003, Plaintiff reported being
19 depressed over neck and back pain, and the nurse gave Plaintiff
20 pain medication, Vicodin, Soma, Neurontin, and Paxil. (A.R. 178.)
21 In May 2004, the nurse noted depression and gave Plaintiff Paxil,
22 opining in a letter to a state agency that the medications helped
23 Plaintiff function in a manner to seek employment such that
24 Plaintiff could perform work or attend classes to learn a new
25 skill. (A.R. 152.) In October 2004, the nurse noted depression
26 and recorded an additional impression of anxiety, but the same
27 medications were recommended, and the nurse again wrote to a
28 state agency that Plaintiff could function in order to be

1  employed and to perform work or attend class or learn a new
2  skill. (A.R. 144.) The ALJ gave substantial weight to the nurse's
3  opinion that Plaintiff could work despite the nurse's not being
4  an acceptable medical source because the long treating
5  relationship afforded a basis for concluding that her assessment
6  was reliable and credible. (AR. 17, 20.)

7      In November 2004, Dr. Steve McIntire performed a
8  neurological, consulting examination of Plaintiff and found a
9  normal mental status examination, with no significant cognitive
10 defects, orientation in three spheres, normal recent and remote
11 memory on testing, normal receptive and expressive language,
12 normal naming, repetition, fluency, and comprehension, normal
13 praxis, intact calculations and reading, and no neglect. (A.R.
14 219, 216-20.) The ALJ gave substantial weight to his opinion
15 regarding Plaintiff's being able to lift and carry fifty pounds
16 occasionally and twenty-five pounds frequently, noting that it
17 was consistent with the medical evidence, was based on a thorough
18 examination, and was rendered b a board-certified neurologist,
19 which enhanced his reliability . (A.R. 17.)

20     In August 2005, nurse Istvanik and her supervisor, Dr. David
21 Pepper, opined that Plaintiff could work with physical
22 limitations. (A.R. 257.) The ALJ rejected the physical
23 limitations (A.R. 18), but he put weight on the opinion that
24 Plaintiff could work. (A.R. 18.) In October 2005, nurse Istvanik
25 diagnosed depression and attention deficit disorder and
26 prescribed Adderall; however, the ALJ noted that the treatment
27 notes did not contain a description of symptoms or of the origin
28 of the diagnosis. (A.R. 265, 18.)

1    The medical evidence thus supports the ALJ's conclusion that
2    a diagnosis of personality disorder with inability to work with
3    others was not supported by the medical evidence.

4    Further, as the ALJ noted, Dr. Wilson's opinion was not
5    supported by any treatment notes, consultative reports, or
6    hospital records that indicated that Plaintiff had a personality
7    disorder or could not relate to and interact with co-workers,
8    supervisors, or the general public. (A.R. 19.) Substantial
9    evidence supported the ALJ's reason, which was specific and
10   legitimate in force.

11   Substantial evidence also supported the ALJ's reasoning that
12   Dr. Wilson's report was inconsistent. (A.R. 20.) The GAF of 68
13   indicated only some mild symptoms, or one who was generally
14   functioning pretty well with some meaningful interpersonal
15   relationships; such a score is inconsistent with the extreme
16   limitation of an inability to interact with the general public,
17   co-workers, or supervisors. DSM-IV-TR at 32, 34. This reasoning
18   was also specific and legitimate in force.

19   The Court concludes that the record contains substantial
20   evidence supporting specific and legitimate reasons for rejecting
21   Dr. Wilson's residual functional capacity assessment concerning
22   Plaintiff's ability to work with others.

23          B. Substantial Evidence Supporting the RFC

24   Plaintiff's argues that the ALJ's conclusion that Plaintiff
25   could interact with and work with others was not supported by
26   substantial evidence, or was an error of law.

27   Social Security regulations define residual functional
28   capacity as the "maximum degree to which the individual retains

1  the capacity for sustained performance of the physical-mental

2  requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th

3  Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)

4  and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). The

5  Commissioner must evaluate the claimant's "ability to work on a

6  sustained basis." Id. (citing 20 C.F.R. § 404.1512(a)); Lester,

7  81 F.3d at 833); see 20 C.F.R. § 416.945. A "regular and

8  continuing basis" means eight hours a day, five days a week, or

9  an equivalent work schedule. S.S.R. 96-8p at 1, 2. The process

10 involves an assessment of physical abilities and then of the

11 nature and extent of physical limitations with respect to the

12 ability to engage in work activity on a regular and continuing

13 basis. 20 C.F.R. § 404.1545(b). Occasional symptom-free periods

14 and even the sporadic ability to work are not inconsistent with

15 disability. Reddick v. Chater, 157 F.3d at 724.

16     In concluding that Plaintiff could perform simple, routine

17 and repetitive tasks with moderate exposure to the public and co-

18 workers and occasional exposure to supervisors, the ALJ, as

19 previously noted, rejected portions of the opinion of Dr. Wilson.

20 However, he also relied on parts of the opinions of Drs. Wilson

21 and Garcia, a state agency physician.

22     In the absence of any evidence of any deficiency of

23 concentration, persistence, or pace[5], he relied on Dr. Wilson's

24 findings, which were not contradicted by other evidence, that

25 Plaintiff could perform simple routine tasks. (A.R. 19.)

26

27 _____

    [5] The Court notes that the ALJ rejected Plaintiff's testimony that she had concentration problems and that

28 her mental health would keep her from working; he concluded that Plaintiff's statements concerning the intensity, duration, and limiting effects of her medically determinable impairments were not entirely credible. A.R. (19-21.) Plaintiff does not challenge the ALJ's credibility determination in the present proceeding.

He also relied to some extent on the opinion of the state agency analyst and medical reviewer that Plaintiff could perform simple, repetitive tasks but could not work in close proximity to others or with the general public. (A.R. 19.) Dr. Archimedes Garcia, a psychiatrist, evaluated Plaintiff for personality disorder and depression on December 27, 2004, and opined that Plaintiff could perform simple, repetitive tasks (SRT) on a sustained basis and complete an eight-hour workday; she was moderately limited in understanding, remembering, and carrying out detailed instructions, in working in coordination with or proximity to others without being distracted by them, in being able to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. She could not be in close proximity to others or work with the general public, but she could adapt to changes in a work setting. (A.R. 234-51, 236.) The ALJ stated that this opinion was consistent with the medical evidence and generally consistent with Dr. Wilson's opinion. (A.R. 19.)

However, as previously noted, the ALJ put weight on the nurse's opinion of Plaintiff's ability to work, and he rejected Dr. Wilson's diagnosis of personality disorder, and his limitation of working with others. (A.R. 19-21.) The ALJ relied on the limited hospitalization, mild treatment (only medication prescribed by a nurse), Plaintiff's mild symptoms, and the records of the treating physician who diagnosed only adjustment disorder with mixed disturbance on Plaintiff's release from the

1   hospital. (A.R. 20-21.) He sought to give appropriate weight to

2   the treating physician's opinion and to the reliable portions of

3   the examining and non-examining physicians' opinions. (A.R. 21.)

4   He concluded that Plaintiff was only moderately limited in her

5   social functioning; he credited the portions of the opinions that

6   found Plaintiff able to work, but he found the RFC of complete

7   inability to relate to the public, coworkers, and supervisors

8   unsupported by the evidence and thus too severe. He therefore

9   imposed limitations of only moderate exposure to the public and

10   co-workers and occasional exposure to supervisors. (A.R. 20-21.)

11      As Defendant argues, it is possible for an expert opinion to

12   constitute substantial evidence even if the ALJ does not agree

13   with everything the expert says. <u>Magallanes v. Bowen</u> 881 F.2d

14   747, 753 (9th Cir. 1989). Here, the ALJ gave specific and

15   legitimate reasons, supported by substantial evidence, for

16   rejecting the portions of the expert opinions concerning

17   personality disorder and total inability to interact with others

18   at work. The ALJ imposed less restrictive limitations based on

19   the portions of the opinions that he properly found to be

20   entitled to weight. The opinions of the treating physician at the

21   hospital, the nurse, and the examining physician constituted

22   substantial evidence. Further, the opinion of the nonexamining

23   physician, Dr. Garcia, also constituted substantial evidence

24   because it was based on the findings of an examining physician.

25   <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).

26      Contrary to Plaintiff's assertion, the ALJ in the present

27   case did not substitute his lay judgment for an expert's opinion

28   by simply rejecting, or by interpreting, raw, technical, medical

1  data. See, Gonzalez Perez v. Secretary of Health and Human
2  Services, 812 F.2d 747, 749 (1st Cir. 1987) (cited by Plaintiff).
3  Instead, the ALJ detailed all the pertinent data and expert
4  opinions concerning Plaintiff's RFC with respect to mental
5  impairments, stated legally sufficient reasons supported by
6  substantial evidence for rejecting portions of those opinions,
7  resolved conflicts in the evidence concerning Plaintiff's RFC,
8  and determined Plaintiff's RFC. To the extent that medical
9  evidence is inconsistent or conflicting, it is the responsibility
10 of the ALJ to resolve any conflicts. Morgan v. Commissioner, 169
11 F.3d 595, 603 (9th Cir. 1999); Saelee v. Chater, 94 F.3d 520, 522
12 (9th Cir. 1996); Matney on Behalf of Matney v. Sullivan, 981 F.2d
13 1016, 1020 (9th Cir. 1992).

14    IV. Recommendation

15    Pursuant to the foregoing analysis, it is concluded that
16 Plaintiff's arguments should be rejected. The ALJ's decision was
17 reached by the use of proper legal standards and is supported by
18 substantial evidence.

19    Accordingly, it IS RECOMMENDED that

20    1. Plaintiff's social security complaint BE DENIED; and

21    2. Judgment for Defendant Michael J. Astrue, Commissioner of
22 Social Security, and against Plaintiff Chantel Fuller, BE
23 ENTERED.

24    This report and recommendation is submitted to the United
25 States District Court Judge assigned to the case, pursuant to the
26 provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the
27 Local Rules of Practice for the United States District Court,
28 Eastern District of California. Within thirty (30) days after

1  being served with a copy, any party may file written objections
2  with the court and serve a copy on all parties. Such a document
3  should be captioned "Objections to Magistrate Judge's Findings
4  and Recommendations." Replies to the objections shall be served
5  and filed within ten (10) <u>court</u> days (plus three days if served
6  by mail) after service of the objections. The Court will then
7  review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
8  (b)(1)(C). The parties are advised that failure to file
9  objections within the specified time may waive the right to
10 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d
11 1153 (9th Cir. 1991).

12
13 IT IS SO ORDERED.
14 **Dated:    May 22, 2008**                    /s/ Sandra M. Snyder
                                      UNITED STATES MAGISTRATE JUDGE
15
16
17
18
19
20
21
22
23
24
25
26
27
28